IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARILUZ NIEVES-VELEZ,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO. 08-2132 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Mariluz Nieves-Vélez, (hereafter "Nieves-Vélez") filed this action seeking judicial review of the final decision of the defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying her application for entitlement to a period of disability and ensuing benefits. (*Complaint, Docket No. 3*). The Court initially referred this matter to this Magistrate Judge for report and recommendation. Nonetheless, upon consent from plaintiff, this opinion and order is issued to resolve matters raised in this judicial action. (*Docket No. 6*).

**BACKGROUND**

Plaintiff Nieves-Vélez is requesting the Court to reverse for lack of substantial evidence the determination and findings of the Commissioner which denied disability and benefits. On April 27, 2004, plaintiff filed an application for disability insurance benefits which was initially denied. Upon request, an administrative hearing was held on June 7, 2006. On June 28, 2006, the presiding Administrative Law Judge ("ALJ") issued an opinion finding plaintiff not to be under disability for the time period at issue that is, February 1, 2000 through December 1, 2001, the date plaintiff was last insured.

The ALJ determined, based on his interpretation of the medical conditions, in the absence of a medical expert to interpret the medical evidence of record, that plaintiff Nieves-Vélez retained the residual functional capacity to perform significant number of jobs in the national economy which were light and unskilled. The ALJ's conclusions were adopted as the final decision of the Commissioner.[1]

The Commissioner answered the Complaint, filed copy of the administrative record and the corresponding memorandum of law in support of the Commissioner's decision. (*Docket Nos. 10, 11, 17*). Plaintiff submitted a well-drafted brief, through counsel Melba N. Rivera-Camacho, in reply to defendant's arguments. (*Docket No. 18*).

After an examination of the administrative record, defendant's brief, counsel for plaintiff's memorandum of law, as well as the administrative record containing the medical evidence on file, with the copy of the administrative hearing transcript, this Magistrate Judge finds the Commissioner's decision is not supported by substantial evidence and should be remanded for further consideration as discussed below.

Plaintiff Nieves-Vélez was a forty six (46) year-old female at the time of the administrative hearing who claimed she became unable to work as of February 1, 2000, because of musculo-skeletal pain, carpal tunnel syndrome, fibromyalgia, diabetes and a mental condition. She had high school education and past relevant work experience as a security guard and previously as material specialist at an electronic factory. Plaintiff was insured for disability purposes up to December 31, 2001.

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
"… [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

**PROCEDURAL HISTORY AND THE ADMINISTRATIVE HEARING**

The ALJ's administrative decision issued on June 28, 2006 was affirmed by the Appeals Counsel finding plaintiff Nieves-Vélez met the disability insured status requirement through December 31, 2001. She had not engaged in any substantial gainful activity since onset date of claimed disability, February 1, 2000. The ALJ determined the medical evidence showed the existence of a musculo-skeletal condition and depression, but were considered of mild intensity, with minimal treatment and not to meet the requisites of the Listing of Impairments. The allegations presented by plaintiff were not found credible upon finding these related to a period prior to December 31, 2001. Thus, the ALJ considered plaintiff Nieves-Vélez did not have a severe impairment. The ALJ concluded that, even if plaintiff Nieves-Vélez was precluded from performing medium or heavy kind of physical exertion and complex or skilled work which would preclude her previous relevant past work as a security guard, she retained the residual functional capacity for light and unskilled work. No discussion of limitations imposed by pain was made by the ALJ nor any relevance as to plaintiff being obese and physical limitations were imposed. Further, since the ALJ did not consider significant any mental condition alleged, there was no consideration whatsoever of a non-exertional limitation. For this reason, the ALJ made a finding that plaintiff Nieves-Vélez was not under disability at any time prior to December 31, 2001, the date Nieves-Vélez was last insured for disability purposes.

The ALJ applied in his administrative decision the evaluation process mandated by law only partially, insofar as concluding that plaintiff: (1) meets the non-disability requirements for a period of disability and disability insurance benefits and is insured for

benefits through December 31, 2001; (2) has not engaged in substantial gainful activity since the alleged onset date of disability, that is, February 1, 2000; (3) allegations of severe impairments because of musculo-skeletal condition, fibromyalgia and a mental condition did not have a minimal affect on her ability to perform basic work-related activities, nor these were considered to constitute severe impairments. However, the ALJ still discussed that, if there was a limitation to heavy and medium level of exertion, plaintiff could not perform her previous type of work as a security guard. Upon consideration of the record, plaintiff Nieves-Vélez was found to retain the residual functional capacity for light work, which does not entail her to lift/carry more than twenty-five (25) pounds. (*Tr. pp. 21-23*).

The ALJ discussed the medical evidence in that prior to December 31, 2001, there was mild osteophytes of the cervical and lumbar spine and discogenic disease at the L5-S1, with spasm of the lumbar spine, representing mild osseous involvement. At the time, there was no disc herniation or advanced osseous pathology of the spine or major joint. The ALJ acknowledged, however, the record referred to radiculitis and radiculopathy but the clinical findings did not reveal significant neurological deficits or involvement. (*Tr. p. 19*). Although Dr. Carlos A. Pantojas referred to leg weakness, marked limitation of the trunk movement and an assessment of limited physical capabilities, the ALJ concluded these were based on plaintiff's own allegations instead of holding persuasive and credible medical evidence. (*Id. p. 20*).

As to the mental condition, the ALJ further indicated the clinical notes during 2001 did not show a significant psychiatric pathology, except for some vague mention of depression. Although a consultative neurologist had also mentioned depression being

present, the ALJ concluded it was based also on subjective allegations of the patient. (*Id.*). Furthermore, the ALJ considered pain allegations not credible nor resulting in significant functional limitations. (*Id. p. 21*). The ALJ finally concluded that, even if exertional limitations were imposed by plaintiff's musculo-skeletal impairments, she could still perform light type of work. If the mental condition was further considered, the ALJ determined that, although complex or skilled work would be precluded, Nieves-Vélez could perform simple, routine, unskilled work.

## LEGAL ANALYSIS

**A. Legal Standard**.

The Court's review is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he/she is disabled within the meaning of the Social Security Act. *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Sec. of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. §§ 404.1520(b). If he is not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude

Mariluz Nieves-Vélez v. Commissioner of S.S.
Opinion and Order
Civil No. 08-2132 (CVR)
Page No. 7

substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f).

The claimant has the burden, under steps one through four, of proving that he/she cannot return to his former employment because of the alleged disability. Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991).

The ALJ concluded, in the alternative, although initially finding the impairments as not severe, that had the process continued at step five of the evaluation process, plaintiff Nieves-Vélez would still not be considered disabled since, although unable to perform her past relevant work as a security guard, she could still perform other type of work within light level of exertion. The ALJ indicated within such level of exertion there were jobs, without addressing any in particular, nor finding that the non-exertional conditions of pain

or mental condition were sufficient, that Nieves-Vélez could perform the full range of light and unskilled work that existed. (*Tr. p. 22*).

In plaintiff Nieves-Vélez' opposition to the Commissioner's decision, counsel for plaintiff replied the evidence of record established the denial of disability benefits was not supported by substantial evidence and the ALJ had erred in interpreting the medical evidence of record by not considering the medical evidence of record in its entirety, including non-exertional limitations, pain, a mental condition and obesity. The ALJ's opinion, being from a lay person and by not having available a medical expert to interpret the medical evidence of record, did not show substantial evidence in support of the finding denying disability and its ensuing benefits. We agree and shall further discuss below.

**B. Conclusions of Law**.

The Court of Appeals for the First Circuit has previously discussed the ALJ is "not required to recite every piece of evidence that favored appellant." Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The available medical record during the period at issue shows plaintiff Nieves-Vélez' cervical spine had small anterior osteophytes at C5/C6 and C6/C7. The thoracic spine had

mild scoliosis, with small anterior osteophytes. The lumbo sacral spine showed evidence of disk space narrowing and vacuum disk phenomenon at L5/S1, as well as sclerosis of the posterior elements. *(Tr. p. 129)*. Another pathology report at HIMA facilities diagnosed straightened lordosis suggestive of muscle spasm with disc space reduction in the same area, secondary to degenerative disc disease. (*Id. p. 132*). A nerve conduction study of the wrist described bilateral median nerve entrapment (carpal tunnel syndrome worse in the right side and right cervical radiculitis). (*Id. p. 134*).

As to the mental condition, Dr. Melvin Velázquez-Muñoz, a psychiatrist, submitted a report dated September 28, 2001, since the patient had been receiving prior treatment on June 09, 2001, September 27, 2001 and September 28, 2001. The first visit was on February 28, 2001, and the patient appeared detached, with poor interaction. Nieves-Vélez had been on psychotherapy and pharmacotherapy, without experiencing relief of symptoms. She was isolated, anhedonic, could not drive and could not carry household duties without help. (*Tr. pp. 122-123*). The mental examination described an obese woman who was dressed in casual disheveled way, who looked older than her age and with a detachment attitude to others. She was anguished, showing a tense and anxious behavior. She was irritable and had poor interaction. Affect was flattened, had low self-confidence, low self-esteem and feelings of worthlessness. The patient had lack of interest in pleasurable activities and loss of concentration, with marked cognitive impairment with poor insight and judgment. (*Id. p. 123*). The diagnosis was of major depressive disorder severe. (*Id. p. 124*).

Consultative examinations of clinical psychologists agreed as to the presence of an affective disorder, in particular a depressive syndrome characterized by psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thing. (*Tr. pp. 139-149*). The degree of limitations imposed by the condition was moderate. (*Id. p. 149*).

Plaintiff Nieves-Vélez testified at the administrative hearing indicating she had no medical plan at the time and her emotional condition was taken care through medication previously prescribed by the psychiatrist and received through her attending physician. (*Tr. pp. 382-384*). She had continued receiving treatment for her emotional condition after the period she was last insured for disability purposes. Likewise, Nieves-Vélez continued medical treatment for her musculo-skeletal conditions long after her insured period expired.

There is evidence of the existence and treatment of both physical and mental conditions before plaintiff's insured status expired, for which the case at bar somewhat differs from Evangelista v. Secretary of Health & Human Servs., 826 F.2d 136, 140, n. 3 (1st Cir. 1987) (the issue is whether or not the claimant is incapacitated as of the date of his insured status expires). *See* Irlanda Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (the fact that a claimant did not receive any treatment and there were significant gaps in the medical evidence during his insured status would be evidence that the impairment was not bothersome enough to require treatment).

At first glance, it is a claimant's burden to show that his disability existed prior to the expiration of the insured status. Cruz Rivera v. Secretary of Health & Human Servs., 818

F.2d 96, 97 (1st Cir. 1986). Still, medical evidence generated after a claimant's insured status expires may be considered for what light it sheds on the question on whether claimant's impairments reached disabling severity before the insured period expired. Deblois v. Secretary of Health & Human Servs., 686 F.2d 76 (1st Cir. 1982).

The medical evidence in this case also shows treatment since 1998 through 2004 for uncontrolled diabetes and high blood pressure. Outside the period of insured status, plaintiff Nieves-Vélez received treatment for lumbar myositis and cervical radiculitis in 2005 and 2006 and for complaints of cervical, lumbar, thoracic and hand conditions through 2002-2004, as well as continued psychiatric treatment.

The ALJ determined that plaintiff retained the residual functional capacity for light level of exertion and there were significant jobs of unskilled nature available. However, even light level of activity under lack of exertional limitations, is distinct from limitations caused by pain or upon the existence of a mental component as non-exertional limitations. Limitations of functions are classified as exertional or nonexertional. *See* 20 C.F.R. 404.1569a. Impairments, including pain, can cause exertional and/or nonexertional limitations of functions. *Id*. Exertional limitations are those that affect a claimant's "ability to meet strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling). *Id*. Non-exertional limitations are those that affect a claimant's "ability to meet the demands of jobs other than the strength demands. *Id*. Examples of non-strength demands of jobs are the ability to concentrate, or to perform "the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." *Id*. Thus, there can be an impact of non-exertional limitations on the occupational basis.

In the instant case, there are no testimonies of a vocational expert or a medical expert to assist the ALJ to compare the symptomatology of plaintiff's physical and mental conditions versus the ability to perform light and unskilled type of work without restrictions.

When plaintiff's non-exertional impairments, even though considered significant, only reduce the occupational base marginally, the Vocational Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability or not. However, the more that occupational base is reduced by non-exertional impairments, the less applicable are the factual predicates underlying the Grid rules and the greater is the need for vocational evidence. Heggarty v. Sullivan, 947 F.2d 990 (1st Cir. 1991).

In the present case, the ALJ did not consider plaintiff Nieves-Vélez' non-exertional impairments imposed by any mental condition which may have eroded the residual functional capacity and applied the GRID in that she was seemly found able to carry out the full range of light type of work, without limitations.[2] This conclusion was effected upon disregarding the findings and reports of the treating physician which showed the patient suffered from fibromyalgia, musculo-skeletal and generalized pain and a mental component.

In the instant case, it was determined plaintiff Nieves-Vélez could perform light type of work. For this reason, the Commissioner should carry the burden of showing availability of jobs in the national economy by means other than the GRID, that is, obtaining the

---

[2] Exclusive reliance on the GRID is not appropriate in mixed exertional/nonexertional cases. Ortiz v. Secretary of Health & Human Servs., 890 F.2d 520, 524-25 (1st Cir. 1989).

Mariluz Nieves-Vélez v. Commissioner of S.S.
Opinion and Order
Civil No. 08-2132 (CVR)
Page No. 13

testimony of a vocational expert. Through the vocational expert, the ALJ may determine and obtain what kind of jobs remained, within light and/or sedentary level of exertion, for individual with a mental condition who may be restricted by depression and by non-exertional limitations imposed by pain.

In addition to above discussed, the testimony of a medical expert is needed because the ALJ is not qualified to interpret raw medical data in functional terms. Rodríguez v. Secretary of Health & Human Servs., 893 F.2d 401, 403 (1st Cir. 1989).

To review the final decision of the Commissioner, courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[3] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). *See* Rodríguez, 647 F.2d at 222. Considering the above discussed, substantial evidence does not support the decision of the Commissioner in this case.

Remand for further proceedings is the appropriate remedy following the judicial ALJ's determination that plaintiff Nieves-Vélez was not disabled and upon review finding said decision not supported by substantial evidence. Remand will allow the Commissioner

---

[3] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

to fulfill his role of resolving conflicting evidence, consider additional evidence pertinent to plaintiff's insured period, and benefit from the testimonies of vocational and medical experts. Freeman v. Barnhart, 274 F.3d at 609.

As above discussed, in the present case, the decision of the Commissioner, adopting the findings of the ALJ is REMANDED for further considerations consonant with above discussion.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge, having perused the record and considered whether there was substantial evidence in support of the decision rendered by the Commissioner concludes that it is not supported by substantial evidence and the matter should be REMANDED.

IT SO ORDERED.

At San Juan, Puerto Rico, on this 12th day of January of 2010..

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE